## AFFIDAVIT

I, Timothy Stark, being duly sworn, state as follows:

## BACKGROUND OF AFFIANT

1.   I am a Special Agent with Homeland Security Investigations. I have been so employed since approximately August 2008. As part of my duties as a Homeland Security Investigations Special Agent, I investigate criminal violations relating to narcotics trafficking offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage and importation of controlled substances.  I have received training in the area of narcotics investigations, money laundering, financial investigations and various methods which drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of narcotics laws.

2.   I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

3.   This Affidavit is submitted in support of an arrest warrant and criminal complaint charging **Robert Fitzroy COORE ("COORE")** – a Jamaican citizen who was born on December 1, 1972, **Raphael Orlando SMITH ("SMITH")** – a naturalized U.S. citizen who was born on February 13, 1972, **Shuree Antoinette JEFFERSON ("JEFFERSON")** – a U.S. citizen who was

born February 25, 1978, and **Kevin J. GILMORE ("GILMORE") -** a U.S. citizen with the following offenses:

- Possession with intent to distribute methamphetamine, a schedule II controlled substance, in violation of 21 U.S.C § 841(a)(1), (b)(1)(A)
- Conspiracy to distribute methamphetamine, a schedule II controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)

4. The facts set forth in this Affidavit are known to me as a result of my personal observations, my training and experience, and information from other law enforcement officers. These are not all the facts known to me throughout the course of this investigation, but rather only those which are essential to establish probable cause in support of an arrest warrant and criminal complaint against COORE, SMITH, JEFFERSON, and GILMORE.

## DRUGS INVOLVED

5. Methamphetamine is a Schedule II controlled substance as defined by 21 U.S.C. §811(a) and 21 CFR §1308.12(d)(2). Methamphetamine is an addictive synthetic stimulant that affects the central nervous system and can be ingested orally, by smoking, snorting, or injecting. Methamphetamine releases high levels of dopamine which stimulate brain cells and enhances body mood and movement.

**PROBABLE CAUSE**

6. In March 2019, Homeland Security Investigations and Cleveland Police Department initiated an investigation into the drug trafficking activities of **Robert Fitzroy COORE**.

7. On March 27, 2019, at approximately 7:30 p.m., CS-1, a person cooperating with law enforcement, introduced an undercover agent (UCA) to **Robert Fitzroy COORE** at Cheesecake Factory on Cedar Road in Beachwood, Ohio. For approximately two hours, **COORE** detailed to the UCA his past and present drug trafficking activities. During this meeting **COORE** agreed to provide the UCA with two pounds of methamphetamine in exchange for $7,000. At the conclusion of the meeting, **COORE** instructed the UCA to provide $3,600 as a down payment for the two pounds of methamphetamine. The UCA provided the requested money, and the meeting terminated at approximately 9:30 p.m.

8. On March 30, 2019, **COORE** contacted the UCA via text message. **COORE** arranged to meet UCA at Winking Lizard Tavern on Quarry Lane in Independence, Ohio to provide two pounds of methamphetamine. At approximately 2:10 p.m., **COORE** arrived at Winking Lizard and met with the UCA. At the conclusion of this meeting, **COORE** provided the UCA with vacuum-sealed bags containing approximately two pounds of a white/clear crystal substance that field-tested positive for methamphetamine. Robert **COORE** requested $3,400 to satisfy the balance owed on this methamphetamine.

9. On March 30, 2019, Homeland Security Investigations learned that Aurora, Ohio police had previously encountered **COORE** during routine traffic enforcement. During this

encounter, COORE provided Aurora police with identification in the name Sheldon PAUL (3/17/1977).

10. On April 1, 2019, COORE contacted the UCA on the telephone and requested payment for balance owed on the previous purchase of methamphetamine. COORE told the UCA that he was travelling to California and wanted to meet with him prior to his trip. The UCA told COORE that no meeting would be possible prior to his trip. COORE acknowledged and advised UCA that should he need more methamphetamine while he was in California, he would have his partner meet with him to facilitate any transaction.

11. On April 3, 2019, Homeland Security Investigations identified that on April 2, 2019, COORE traveled on Delta Airlines flights 5093 and 1742 under the alias Sheldon PAUL (3/17/1977).

12. On April 3, 2019, COORE contacted UCA on the telephone and told the UCA that he wanted him to meet with his partner to obtain the balance owed for the previous purchase of methamphetamine. UCA agreed to meet COORE's partner at the Winking Lizard Tavern on Quarry Lane in Independence, Ohio. UCA was instructed he would receive a text message from COORE's partner when he arrived. UCA received a text from COORE's partner at approximately 6:00 p.m. A male, later identified as Raphael SMITH[1] arrived at the meet location, and met with the UCA inside Winking Lizard Tavern. This meeting lasted until approximately 7:00 p.m. At the end of the meeting, UCA provided SMITH with $3,400 of government funds to satisfy the amount owed on the methamphetamine received from COORE on March 30, 2019.

---

[1] SMITH was identified on April 10, 2019, after Aurora PD stopped his vehicle and identified him from his driver's license.

13. On April 9, 2019, UCA contacted COORE on the telephone to arrange for the purchase of one pound of crystal methamphetamine. COORE agreed to have his partner contact UCA to arrange for the sale of the methamphetamine.

14. On April 10, 2019, at approximately 12:41 p.m. COORE contacted UCA on the telephone and told UCA that he wanted him to meet with his partner on same date to purchase two pounds of methamphetamine. UCA was further advised that his partner would contact him to arrange a meeting location. At approximately 2:18 p.m. SMITH contacted UCA on the telephone and agreed to meet on the same date at Buffalo Wild Wings on Tiedeman Rd. in Brooklyn, Ohio.

15. At approximately 3:10 p.m. SMITH arrived at the Buffalo Wild Wings. The UCA entered the passenger seat of SMITH's vehicle. During conversation, SMITH stated that he and COORE were partners in a drug trafficking organization that distributes cocaine, marijuana and methamphetamine. SMITH told UCA that he was seeking to identify additional ways to transport these narcotics from his source of supply to the Northern District of Ohio. UCA provided SMITH with $3,400 of government funds as a partial payment for two pounds of methamphetamine. After which, SMITH removed the center console between them and retrieved a plastic wrapped bundle from a hidden compartment beneath it. SMITH then provided the plastic wrapped bundle to the UCA. The bundle contained two pounds of a white/clear crystal substance that later field-tested positive for crystal methamphetamine. This meeting ended at approximately 4:25 p.m.

16. On April 18, 2019, at approximately 11:20 a.m., UCA contacted COORE on the telephone and requested to purchase two pounds of methamphetamine. COORE agreed and drug transaction was scheduled to take place on same date at Quaker Steak & Lube on Canal Rd. in Cleveland, Ohio.

17. At approximately 12:40 p.m., COORE and SMITH arrived at the Quaker Steak & Lube on Canal Rd. Cleveland, Ohio, and met with the UCA. SMITH, COORE and UCA discussed the future use of a private airplane to facilitate the movement of bulk quantities of narcotics from the source of supply to the Northern District of Ohio. COORE told UCA that he recently returned from California where he arranged for the shipment of a bulk quantity of narcotics to arrive in the Northern District of Ohio via a tractor trailer. COORE stated the shipment was scheduled to arrive in the Northern District of Ohio around April 22, 2019. COORE and SMITH requested UCA's assistance with locating a warehouse with a loading dock and tow motor capable of offloading the tractor trailer upon arrival in the Northern District of Ohio.

18. COORE, SMITH and the UCA exited the Quaker Steak & Lube and the UCA went to SMITH and COORE's vehicle and received a white plastic bag from COORE, which contained two pounds of a white/clear crystal substance that field tested positive for methamphetamine. UCA provided COORE with $3,400 of government funds as a partial payment for this methamphetamine.

19. On April 20, 2019, at approximately 2:05 p.m., the UCA spoke with COORE on the telephone. The UCA provided the address of a warehouse in Cleveland, Ohio, within the Northern District of Ohio, that could be utilized by COORE and SMITH to offload the narcotics. COORE told the UCA that he would advise if the warehouse was acceptable. At approximately 3:29 p.m., COORE contacted UCA on the telephone and stated that the warehouse location provided by UCA was "perfect". COORE and the UCA agreed to meet on same date to discuss further.

20. On Saturday April 20, 2019, around 8:00 p.m., the UCA met with COORE. COORE now advised undercover agent that he was not sure if he would need the warehouse. COORE told the UCA that he was anticipating 30-50 kilos of cocaine, and that he would contact the driver of the truck to see how it was loaded (to determine if warehouse with loading dock was necessary). COORE stated that the truck was scheduled to arrive on Monday April 22, 2019. COORE also stated that he was still sitting on a quantity of methamphetamine from his past load of 100lbs (indicated that it was approx. 40lbs.). COORE stated that he was intending to travel back to California at the end of this week to coordinate more drug shipments to the NDOH.

21. On Monday April 22, 2019, the UCA contacted COORE to arrange to pay him $3400 of government funds to fulfil amount owed on last 2lb of methamphetamine. The UCA and COORE met in Valley View, Ohio. COORE told the UCA that the shipment had already arrived in the Cleveland, Ohio, area [30-50 kilos of cocaine].

22. On April 23, 2019, at approximately 9:30 a.m., UCA contacted COORE on the telephone and arranged for the purchase of 4 pounds of methamphetamine. COORE advised UCA to meet at an auto repair shop located at 22500 Lakeland Blvd. Euclid, Ohio 44132 to conduct the drug transaction. At approximately, 11:15 a.m., COORE arrived at the auto repair shop located at 22500 Lakeland Blvd. Euclid, Ohio 44132. COORE was encountered by law enforcement at this time and approximately 4 pounds of suspected methamphetamine was recovered from his vehicle.

23. On April 23, 2019, at approximately 11:30 a.m., law enforcement executed a federal search warrant at 633 Grand View Lane in Aurora, Ohio. Upon entry into the residence, law enforcement encountered SMITH and Individual A. During a search of the residence, law

enforcement found and seized approximately 3 pounds of crystal methamphetamine, approximately 10 pounds of marijuana, and approximately $30,000.

24. Law enforcement conducted an interview of SMITH at the time of the search of the residence on Grand View Lane. Prior to the interview law enforcement advised SMITH of his Miranda Rights, SMITH agreed to speak with law enforcement. During the interview law enforcement confronted SMITH about his activities on April 10, 2019 (referenced herein), SMITH told law enforcement that he met with the UCA and delivered him a bag. SMITH said that he did not know what was in the bag but did so at the direction of COORE. SMITH said that the UCA gave him cash after he delivered the bag, and SMITH gave the cash to COORE. SMITH stated that was the second time he had seen the UCA. SMITH stated he met the UCA at the direction of COORE one time previous to that (April 3, 2019) to collect currency from the UCA on COORE's behalf. SMITH claimed the crystal methamphetamine was not his and he was only doing favors for COORE. At the conclusion of the interview law enforcement advised SMITH he was under arrest and was being transported to Cuyahoga County Jail for processing. Law enforcement released Individual A without charges.

25. On April 23, 2019, at approximately 11:30 a.m., law enforcement executed a federal search warrant 1199 Alpine Rd. in Cleveland Heights, Ohio. Upon entry into the residence, law enforcement encountered JEFFERSON, GILMORE and four minors (children of JEFFERSON and COORE). During a search of the residence, law enforcement found and seized approximately 1 ounce of suspected heroin from the master bedroom shared by JEFFERSON and GILMORE and approximately $15,000.

26. Law enforcement observed JEFFERSON looking through the front window of the residence on Alpine Rd. as they were approaching to enter the residence. JEFFERSON then ran towards the rear of the residence and did not respond to law enforcements announcement prior to entry. Upon entry, law enforcement heard the toilet flushing repeatedly on the first floor. Law enforcement encountered GILMORE as he exited that first-floor bathroom. Immediately after law enforcement encountered JEFFERSON and GILMORE, JEFFERSON asked to use the bathroom. Law enforcement escorted JEFFERSON, after having been searched, to the first-floor bathroom and she immediately flushed the toilet. Upon closer examination, law enforcement officers observed suspected heroin residue in and around the toilet. Law enforcement suspected GILMORE had been flushing narcotics down the toilet after being alerted by JEFFERSON who saw law enforcement approaching and recognized this as an attempt by JEFFERSON to further flush narcotics down the toilet. Law enforcement immediately stopped JEFFERSON from continuing to flush the toilet and recovered suspected heroin residue from the toilet bowl. JEFFERSON immediately told law enforcement she was arrested on April 22, 2019, while attempting to sell approximately 3 pounds of crystal methamphetamine and was cooperating with the DEA. Affiant spoke with DEA agents who were involved in JEFFERSON's arrest, and they confirmed that she was arrested the prior day during a controlled purchase of 3 pounds of white/clear crystal substance that JEFFERSON acknowledged was crystal methamphetamine. Law enforcement then transported JEFFERSON and GILMORE to Cuyahoga County Jail for processing.

## CONCLUSION

27. Based on the foregoing, I believe that there is probable cause to believe that COORE, SMITH, JEFFERSON, and GILMORE have committed the offenses specified in paragraph 3 herein.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

FURTHER AFFIANT SAYETH NOT.

Timothy Stark
Special Agent
Homeland Security Investigations

Sworn to via telephone after submission by reliable electronic means. Crim.Rules. 4.1; 41(d)(3)



Thomas M. Parker
United States Magistrate Judge
**10:44 AM, Apr 24, 2019**